UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

QAISAR KHAN,                       )
an individual,                        )
                                    )       CASE NO.: 8:14-cv-01683-EAK-MAP
                Plaintiff,         )
vs.                               )
                                    )
KIR TAMPA 003, LLC,            )
a Foreign Limited Liability Company,   )
                                    )
               Defendant.     )
_____ )

**PLAINTIFF'S TRIAL BRIEF AND PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

## I.    INTRODUCTION

This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* Qaisar Khan ("Plaintiff"), who is paralyzed from the waist down, seeks the removal of numerous architectural barriers he knew of and/or encountered at the shopping center ("Property") belonging to Kir Tampa 003, LLC ("Defendant").

In accordance with this Court's Case Management of Scheduling Order (Dkt. No. 16), Plaintiff hereby submits this Trial Brief and Proposed Findings of Fact and Conclusions of Law to the Court in the above-captioned matter.[1]

---

[1] Further, Plaintiff directs the Court to the L.R. 3.06(a) Joint Pretrial Statement (filed concurrently herewith), which will explain which of the following findings of fact and conclusions of law are *undisputed* as between the parties. Further, Plaintiff notes that pursuant to the Case Management Order, Plaintiff will file his motions *in limine* at least three weeks prior to the commencement of trial.

## II.   <u>RELEVANT PROCEDURAL HISTORY</u>[2]

Plaintiff filed his Complaint on July 11, 2014. Dkt. No. 1. Defendant Answered on September 24, 2014. Dkt. No. 13. Discovery commenced, which included written discovery, document production, expert Property inspections, and a deposition of Defendant's expert.

Following discovery, Plaintiff moved for summary judgment on May 5, 2015 with respect to five issues:

> (a) Defendant, as the owner/operator of The Plaza at Citrus Park, a place of public accommodation, is liable for noncompliance with Title III of the Americans with Disabilities Act ("ADA"); (b) Plaintiff qualifies as a disabled individual under the ADA; (c) Defendant's [P]roperty contains architectural barriers; (d) that the architectural barriers establish liability under the ADA's 'new construction' standard; and (e) Plaintiff has standing to bring this action and seek injunctive relief.

Dkt. No. 24 at 3.[3] Defendant opposed Plaintiff's motion, arguing that the Plaintiff lacked standing with respect to a certain number of barriers, and that Plaintiff's requests for injunctive relief were mooted in part by what it claimed were recent modifications to the Property. Dkt. No. 27. Plaintiff replied on June 2, 2015, responding to Defendant's arguments as to standing, pointing out that a number of barriers still existed, and raising a number of evidentiary objections. Dkt. No. 30.

Shortly after Plaintiff moved for summary judgment, Defendant in turn filed its motion for summary judgment on May 14, 2015, raising the same arguments presented in its opposition. Dkt. No. 25. Plaintiff filed his opposition brief shortly thereafter. Dkt. No. 26.

---

[2] This procedural history is relevant to many of the legal and/or evidentiary disputes that the Court will adjudicate either before trial or at trial, and is therefore included to assist the Court in assessing Plaintiff's proposed findings of fact, conclusions of law, and motions in limine (forthcoming).

[3] Where page numbers are referenced, Plaintiff refers to the page number assigned by the Clerk's CM/ECF system, rather than those provided by the parties at the bottom of each page.

On June 17, 2015, following the submission of the cross-motions for summary judgment, Defendant sought leave to supplement its motion for summary judgment with what it claimed was evidence (specifically, an affidavit) of the completion of ADA modifications. Dkt. No. 31. Plaintiff opposed Defendant's motion. Dkt. No. 32. One June 22nd, the Court allowed Defendant to file the affidavit, but permitted Plaintiff thirty (30) days to conduct additional discovery related to the affidavit. Dkt. No. 33.

On June 25, Defendant filed the Affidavit of Jerry Bouche in Support of Defendant's Motion for Summary Judgment. Dkt. No. 34. Therein, Mr. Bouche testified that Defendant had corrected the following violations identified by Plaintiff's expert: Barrier Nos. 3-9, 11, 12, 14, 15, 18, 19, 21-23, 25, 26, 28-33, and 36-39. *Id.* at ¶ 5. Mr. Bouche also testified that Defendant did not attempt to remove twelve (12) barriers; namely, Barrier Nos. 1, 2, 10, 12, 13, 16, 17, 20, 24, 27, 34, and 35. *Id*. at ¶ 6.

During the 30-day discovery period that followed, Plaintiff served supplemental interrogatories, requests for the production of documents, and had his expert conduct an additional property inspection to supplement his report. Dkt. Nos. 37-1, 37-2, and 37-3.

Following the discovery period, Plaintiff on July 31, 2015 filed a supplemental memorandum in support of Plaintiff's Motion for Summary Judgment. Dkt. No. 37. Among other arguments, Plaintiff noted that of the twenty-seven (27) barriers Defendant purported to fix, Plaintiff's expert discovered that Defendant had only successfully removed thirteen (13) barriers. *Id.* at 3. Therefore, twenty-six (26) barriers remained at the Property (including the twelve (12) barriers where Defendant admitted it had not even *attempted* to correct). *Id.* Specifically, these were Barrier Nos. 1 -5, 7-10, 12, 13, 15-17, 20-24, 26, 27, 34-37, and 39. These are the barriers that will be the subject of the upcoming trial.

On August 13, 2015, Defendant sought leave to file *another* supplemental memorandum and to re-open discovery to take the Plaintiff's expert's deposition. Dkt. No. 38. Plaintiff vigorously opposed this effort (Dkt. No. 39), and on September 25, 2015, the Court denied Defendant's motion. Dkt. No. 43.

## III.   PLAINTIFF'S PROPOSED FINDINGS OF FACT

1.      Defendant is the owner of the real property and improvements as the Plaza at Citrus Park, generally located at 12803-12845 Citrus Plaza Drive, Tampa, Florida 33625.

2.      The property, a shopping center, is open to the public and provides goods and services to the public.

3.      Defendant is the owner / operator over those areas where Barrier Nos. 1-5, 7-10, 12, 13, 15-17, 20-24, 26, 27, 34-37, and 39 are found.

4.      The property, which is valued by the Hillsborough Country Property Appraiser's office at $34,343,000, contains a number of buildings, sidewalks, and parking lots constructed in 1999 or thereafter.

5.      Defendant is owned entirely by Kimco Income Operating Partnership, L.P.

6.      Qaisar Khan resides at 7821 Chaperon Court, Tampa, Florida 33637.

7.      In 2003, Mr. Khan suffered a severe injury to his back resulting in trauma to his T4 and T5 vertebrae, and is paralyzed from the waist down.

8.      Mr. Khan relies on a wheelchair for mobility.

9.      Mr. Khan lives just 14.3 miles from the Plaza at Citrus Park.

10.     Mr. Khan has visited the Subject Property numerous times and plans to continue doing so. Prior to filing suit, Mr. Khan visited the Subject Property (and patronized the merchants threat) multiple times, including on July 10, 2013.

11.     Since then, he has been back to the property multiple times, having shopped at some of the stores located at the property and dined at the restaurants located on the outparcels.

12.     Plaintiff intends to return to the property. In addition to everyday shopping, Mr. Khan intends to return to the property due the fact that his spouse works in the area and there are numerous dining options in close proximity to the property.

13.     Independent of his intent to return to the Subject Property as a patron, he additionally intends to return to the property as an ADA tester to determine whether the barriers to access have been remedied.

14.     On his visits to the Subject Property, Mr. Khan encountered a number of barriers hindering his access.

15.     For example, he had difficulty parking due to excessively sloped spaces and/or access aisles.

16.     Mr. Khan also had difficulty getting from the parking spaces to the sidewalk, due to curb ramps that were excessively sloped, lacked level landings, and containing uneven changes in level.

17.     He also had difficulty navigating the sidewalk and entering various tenant locations, due to excessively sloped and/or cross-sloped paths of travel.

18.     Prior to filing the Complaint in this action, Plaintiff encountered and/or observed Barrier Nos. 1-5, 7-10, 12, 13, 15-17, 20-24, 26, 27, 34-37, and 39 (described in greater detail below).

19.   **Barrier No.**[4] **1** exists at the Property. At the Jos. A. Bank accessible parking area, the slope of the designated accessible space access aisle is 2.4%, in violation of the ADAAG, which provides that access aisles shall not be steeper than 2.08%.

20.   The removal of the aforementioned barrier is structurally practicable, whereby the asphalt may be saw cut and patched so as to provide a ground surface no steeper than 2.08%.

21.   **Barrier No. 2** exists at the Property. At the walking surface nearest Jos. A. Bank, damage exists to the marked accessible route such that it in parts exceeds a slope of 2.08%, in violation of the ADAAG.

22.   The removal of the aforementioned barrier is structurally practicable, whereby the asphalt may be saw cut and patched so as to provide a ground surface no steeper than 2.08%.

23.   **Barrier No. 3** exists at the Property. In modifying the curb ramp nearest Jos. A. Bank, the Defendant failed to provide a level landing at the top of the curb ramp.

24.   The removal of the aforementioned barrier is structurally practicable, whereby the curb ramp may be modified to provide a level landing not to exceed 2.08% with a clear length of at least 36 inches as required.

25.   **Barrier No. 4** exists at the Property. The curb ramp near Avenue has a running slope of exceeding 8.1%, in violation of the ADAAG, which provides that the ramp surface shall not exceed 8.3%.

26.   The removal of the aforementioned barrier is structurally practicable, whereby the curb ramp may be demolished and replaced with a compliant ramp.

27.   **Barrier No. 5** exists at the Property. In modifying the curb ramp near Avenue, the Defendant failed to provide a level landing at the top of the curb ramp.

---

[4] These "Barrier Numbers" refer to the number assigned to the condition by Plaintiff's expert in his expert report. Plaintiff has highlighted the barrier numbers for the Court's reference

28.     The removal of the aforementioned barrier is structurally practicable, whereby the curb ramp may be modified to provide a level landing not to exceed 2.08% with a clear length of at least 36 inches as required.

29.     **Barrier No. 7** exists at the Property. In modifying the curb ramp nearest Massage Envy, the Defendant failed to provide a level landing at the top of the curb ramp.

30.     The removal of the aforementioned barrier is structurally practicable, whereby the curb ramp may be modified to provide a level landing not to exceed 2.08% with a clear length of at least 36 inches as required.

31.     **Barrier No. 8** exists at the Property. The ground surface slope within the required door maneuvering clearance at the Massage Envy entrance is 4%, in violation of the ADAAG, which provides that slopes approaching power activated doors be no steeper than 2.08%.

32.     Alternatively, even if the door threshold requirements do not apply to the aforementioned barrier, this space is part of the sidewalk route to the door, violating the ADAAG's prohibition against cross-slopes exceeding 2.08%.

33.     The removal of the aforementioned barrier is structurally practicable, whereby the asphalt may be saw cut and demolished to provide a compliant maneuvering clearance slope and/or resolve the excessive surface slope.

34.     **Barrier No. 9** exists at the Property. In modifying the curb ramp nearest Staples, the Defendant failed to provide a level landing at the top of the curb ramp.

35.     The removal of the aforementioned barrier is structurally practicable, whereby the curb ramp may be modified to provide a level landing not to exceed 2.08% with a clear length of at least 36 inches as required.

36.     **Barrier No. 10** exists at the Property. The landing at the top of the curb ramp nearest Staples has a structural masonry column protruding into the 36-inch minimum landing clear length required by the ADAAG.

37.     The removal of the aforementioned barrier is structurally practicable, whereby the existing curb ramp can be demolished and relocated elsewhere.

38.     **Barrier No. 12** exists at the Property. The ground surface slope within the required door maneuvering clearance at the Staples entrance is 2.2%, in violation of the ADAAG, which provides that slopes approaching power activated doors be no steeper than 2.08%.

39.     Alternatively, even if the door threshold requirements do not apply to the aforementioned barrier, this space is part of the sidewalk route to the door, violating the ADAAG's prohibition against cross-slopes exceeding 2.08%.

40.     The removal of the aforementioned barrier is structurally practicable, whereby the front entrance ground surface can be appropriately grinded to meet compliance.

41.     **Barrier No. 13** exists at the Property. The designated accessible space nearest Staples has a width of 11'4", in violation of the ADAAG, which requires a minimum width of 13' for the parking space and access aisle combined.

42.     The removal of the aforementioned barrier is structurally practicable, whereby the parking space may be re-striped to provide compliance.

43.     **Barrier No. 15** exists at the Property. The curb ramp nearest Staples contains a running slope in excess of 8.8%, in violation of the ADAAG, with provides that curb ramp surfaces not exceed 8.3%.

44. The removal of the aforementioned barrier is structurally practicable, whereby the existing curb ramp can be demolished, the existing concrete sidewalk saw cut, and a new concrete curb ramp can be installed.

45. **Barrier No. 16** exists at the Property. The maneuvering clearance at the entrance to Petsmart is 3.4%, in violation of the ADAAG, which provides a maneuvering clearance shall not exceed 2.1%.

46. The removal of the aforementioned barrier is structurally practicable, whereby the entrance slope can be ground to an acceptable level, or the existing concrete can be saw cut and demolished and an entrance with acceptable grading provided.

47. Insofar as there is a power activated door at the aforementioned barrier, the measured ground surface violates of the ADAAG, which provides that slopes approaching power activated doors be no steeper than 2.08%.

48. Alternatively, in the case of a power activated door, even if the door threshold requirements do not apply to the aforementioned barrier, this space is part of the sidewalk route to the door, violating the ADAAG's prohibition against cross-slopes exceeding 2.08%.

49. **Barrier No. 17** exists at the Property. The designated accessible space access aisle nearest Petsmart has crack deformations and ponding as a result, which violates the ADAAG's requirement that all floor and ground surfaces shall be stable, firm, and slip resistant, as well as prohibitions against excessive changes in level.

50. The removal of the aforementioned barrier is structurally practicable; whereby one can saw cut and patch the asphalt so as to provide a ground surface not exceeding 2.08%.

51. **Barrier No. 20** exists at the Property. The designated accessible space's access aisle nearest Bed Bath & Beyond has crack deformations and ponding as a result, which violates

the ADAAG's requirement that all floor and ground surfaces shall be stable, firm, and slip resistant, as well as prohibitions against excessive changes in level.

52.     The removal of the aforementioned barrier is structurally practicable; whereby one can saw cut and patch the asphalt so as to provide a ground surface not exceeding 2.08%.

53.     **Barrier No. 21** exists at the Property. In modifying the curb ramp nearest Party City, the Defendant failed to provide a level landing at the top of the curb ramp.

54.     The removal of the aforementioned barrier is structurally practicable, whereby the curb ramp may be modified to provide a level landing not to exceed 2.08% with a clear length of at least 36 inches as required.

55.     **Barrier No. 22** exists at the Property. The ground surface slope within the required door maneuvering clearance at the Party City entrance is 3%, in violation of the ADAAG, which provides that slopes approaching power activated doors be no steeper than 2.08%.

56.     Alternatively, even if the door threshold requirements do not apply to the aforementioned barrier, this space is part of the sidewalk route to the door, violating the ADAAG's prohibition against cross-slopes exceeding 2.08%.

57.     The removal of the aforementioned barrier is structurally practicable, whereby the asphalt may be saw cut and demolished to provide a compliant maneuvering clearance slope and/or resolve the excessive surface slope.

58.     **Barrier No. 23** exists at the Property. In modifying the curb ramp nearest Dress Barn, the Defendant failed to provide a level landing at the top of the curb ramp.

59.     The removal of the aforementioned barrier is structurally practicable, whereby the curb ramp may be modified to provide a level landing not to exceed 2.08% with a clear length of at least 36 inches as required.

60.     **Barrier No. 24** exists at the Property. The designated accessible space access aisle nearest Dress Barn has crack deformations and ponding as a result, which violates the ADAAG's requirement that all floor and ground surfaces shall be stable, firm, and slip resistant, as well as prohibitions against excessive changes in level.

61.     The removal of the aforementioned barrier is structurally practicable; whereby one can saw cut and patch the asphalt so as to provide a ground surface not exceeding 2.08%.

62.     **Barrier No. 26** exists at the Property. The ground surface slope within the required door maneuvering clearance at the Ross entrance is 2.2%, in violation of the ADAAG, which provides that slopes approaching power activated doors be no steeper than 2.08%.

63.     Alternatively, even if the door threshold requirements do not apply to the aforementioned barrier, this space is part of the sidewalk route to the door, violating the ADAAG's prohibition against cross-slopes exceeding 2.08%.

64.     The removal of the aforementioned barrier is structurally practicable, whereby the front entrance ground surface can be appropriately grinded to meet compliance.

65.     **Barrier No. 27** exists at the Property. At the Ross accessible parking area, the slope of the designated accessible space access aisle is 2.5%, in violation of the ADAAG, which provides that access aisles shall not be steeper than 2.08%.

66.     The removal of the aforementioned barrier is structurally practicable, whereby the asphalt may be saw cut and patched so as to provide a ground surface no steeper than 2.08%.

67.     **Barrier No. 34** exists at the Property. At the walking surface from the parking lot to Best Buy, the route contains damage resulting in changes in level exceeding ½", such that it does not meet the ADAAG's prohibition against sudden changes in level or surface slopes in excess of 2.08%

68.     The removal of the aforementioned barrier is structurally practicable, whereby the concrete can be ground so as to remove the sudden changes of level and provide surface slopes no greater than 2.08%

69.     **Barrier No. 35** exists at the Property. The maneuvering clearance at the entrance to Best Buy is 3.8%, in violation of the ADAAG, which provides a maneuvering clearance shall not exceed 2.1%.

70.     The removal of the aforementioned barrier is structurally practicable, whereby the entrance slope can be ground to an acceptable level, or the existing concrete can be saw cut and demolished and an entrance with acceptable grading provided.

71.     Insofar as there is a power activated door at the aforementioned barrier, the measured ground surface violates of the ADAAG, which provides that slopes approaching power activated doors be no steeper than 2.08%.

72.     Alternatively, in the case of a power activated door, even if the door threshold requirements do not apply to the aforementioned barrier, this space is part of the sidewalk route to the door, violating the ADAAG's prohibition against cross-slopes exceeding 2.08%.

73.     **Barrier No. 36** exists at the Property. The curb ramp near Joann Fabrics has a running slope of exceeding 8.5%, in violation of the ADAAG, which provides that the ramp surface shall not exceed 8.3%.

74.     The removal of the aforementioned barrier is structurally practicable, whereby the curb ramp may be demolished and replaced with a compliant ramp.

75.     **Barrier No. 37** exists at the Property. The ground surface slope within the required door maneuvering clearance at the Joann Fabrics entrance is 2.6%, in violation of the ADAAG, which provides that slopes approaching power activated doors be no steeper than 2.08%.

76.     Alternatively, even if the door threshold requirements do not apply to the aforementioned barrier, this space is part of the sidewalk route to the door, violating the ADAAG's prohibition against cross-slopes exceeding 2.08%.

77.     The removal of the aforementioned barrier is structurally practicable, whereby the asphalt may be ground to provide a compliant maneuvering clearance slope and/or resolve the excessive surface slope.

78.     **Barrier No. 39** exists at the Property. At the Sports Authority accessible parking area, the slope of the designated accessible space access aisle contains a 2.9% cross slope, in violation of the ADAAG, which provides that access aisles shall not be steeper than 2.08%.

79.     The removal of the aforementioned barrier is structurally practicable, whereby the asphalt may be saw cut and patched so as to provide a ground surface no steeper than 2.08%.

IV.     **PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW**

1.      **Plaintiff qualifies as a disabled individual under the Americans with Disabilities Act.**

As noted in Plaintiff's Proposed Findings of Fact, Plaintiff is paralyzed from the waist down and relies on a wheelchair for mobility. Mobility is a major life activity under the ADA, 42 U.S.C. § 12102(2)(A), which states that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, *walking, standing,*

*lifting, bending*, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. (emphasis added). Accordingly, the Court should conclude, as a matter of law, that the Plaintiff qualifies as a disabled individual under the Americans with Disabilities Act.

> **2.   Defendant is the owner/operator of a "place of public accommodation" within the meaning of 42 U.S.C. § 12182(a).**

The phrase "public accommodation" is defined in terms of twelve (12) extensive categories which the legislative history notes "should be construed liberally" to afford people with disabilities "equal access" to the wide variety of establishments available to the non-disabled. *See* 42 U.S.C. § 12181(7); Sen. Rep. No. 101-116, at 59; H.R. No. 101-485, pt. 2, at 100, U.S. Code Cong. & Admin. News 1990, pt. 2, at pp. 303, 382-383. The ADA enumerates that a "restaurant, bar, or other establishment serving food or drink", "sales or rental establishment", and/or a "shopping center" are among those entities that are considered public accommodations. 42 U.S.C. § 12181(7), sub-sections (B) and (E).

In the instant case, the Defendant's Property easily meets the definitions of these sub-sections.  Further, Defendant has already stipulated that it is the owner / operator of the shopping center (except for certain outparcels that are not subject to Plaintiff's claim for injunctive relief), which provides goods and services to the public.  Dkt. No. 27-2 at ¶¶ 1-3.  Accordingly, the Court should conclude, as a matter of law, that the Defendant is the owner/operator of a "place of public accommodation" within the meaning of 42 U.S.C. § 12182(a).

> **3.   The 'new construction' standard applies to Defendant's Property.**

As a matter of law, the Court should conclude that the 'new construction' standard applies to Defendant's Property.  Under the ADA, unlawful discrimination includes "a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can

demonstrate that it is structurally impracticable to meet the requirements" of the ADAAG. 42 U.S.C. § 12183(a)(1).

Here, discovery has established and Defendant does not dispute that its Property was designed and constructed for first occupancy well after July 26, 1990.  In responding to Plaintiff's Statement of Undisputed Material Facts, Defendant admitted that the Property consists of "buildings, sidewalks and parking lots constructed in 1999 or thereafter." Def.'s Response to Pl.'s SOF, Dkt. No. 27-2, at ¶ 5.  Thus, the 'new construction' standard applies in this case.

**4.   Defendant cannot avail itself of the 'structural impracticability' defense**

The Court should also hold that Defendant cannot avail itself of the 'structural impracticability' defense.  Where, as here, the new construction standard applies, "the command to build accessible facilities is excepted only if meeting the requirements of the Act would be 'structurally impracticable.'"  *Paralyzed Veterans of Amer. V. Ellerbe Becket Architects & Engineers, P.C.*, 950 F. Supp. 393, 395 (D.D.C. 1996) (quoting 42 U.S.C. § 12183(a)(1)). 'Structural impracticability,' in turn, means "those ***rare circumstances*** where the unique characteristics of the terrain prevent the incorporation of accessibility features."  28 C.F.R. § 36.401(c) (emphasis added).  Importantly, it is the Defendant's burden to show that barrier removal is structurally impracticable. See 42 U.S.C. § 12183(a)(1) (barrier removal required "except where *an entity can demonstrate* that it is structurally impracticable to meet the requirements…") (emphasis added)

Defendant cannot meet its burden with respect to these 'rare circumstances.'  Plaintiff's expert made a careful showing that the remediations he suggested were structurally practicable. Defendant does not contest this in its expert disclosure.  Accordingly, the 'structural impracticability' defense in inapplicable in the instant matter.

**5.    Defendant's ADAAG violations make the property not 'readily accessible to and usable by individuals with disabilities'**

If the Court finds that Defendant has violated the ADAAG, it should hold, as a matter of law, that Defendant's Property is not readily accessible to and usable by individuals with disabilities.  As noted above, unlawful discrimination includes "a failure to design and construct [new construction] facilities…that are readily accessible to and usable by individuals[.]"42 U.S.C. § 12183(a)(1).

Whether a facility is 'readily accessible to and usable by individuals with disabilities' is in turn defined by reference to the ADAAG architectural standards.  *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011) ("[a]ll new construction should comply with the Attorney General's [ADA Accessibility Guidelines], and the regulations require that all new construction (and alterations) shall comply with the issued standards"); *see also Access Now, Inc. v. S. Florida Stadium Corp.*, 161 F. Supp. 2d 1357, 1362 (S.D. Fla. 2001) ("[f]ailure to abide by the Guidelines in new construction evidences intentional discrimination against disabled persons").

The position taken by the Eleventh Circuit is confirmed by the Department of Justice's guidance interpreting its own regulations.  As noted in the DOJ's Technical Assistance Manual:

> *What is "readily accessible and usable?"*   This means that facilities must be built in strict compliance with the Americans with Disabilities Act Accessibility Guidelines (ADAAG).  There is no cost defense to the new construction requirements.

Title III Technical Manual, Dkt. No. 24-11, at 62. [5]

---

[5] "The Justice Department's interpretation of its own regulations, such as the Technical Assistance Manual, must also be given substantial deference and will be disregarded only if 'plainly erroneous or inconsistent with the regulation.'"  *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 732 (9th Cir. 1999) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, (1994)).

Here, as noted in Plaintiff's proposed findings of fact and expert report, Defendant's property fails to meet the technical specifications provided in the ADAAG in multiple instances. The pertinent provisions of the ADAAG are, *inter alia*:[6]

- ADAAG 302 ("Floor or Ground Surfaces"): Barrier Nos. 17, 20, 24;

- ADAAG 303 ("Changes in Level): Barrier Nos. 17, 20, 24, 34;

- ADAAG 402 ("Accessible Routes"): Barrier Nos. 8;

- ADAAG 403 ("Walking Surfaces"): Barrier Nos. 2, 8, 12, 16, 22, 26, 34, 35, 27;

- ADAAG 404 ("Doors, Doorways, and Gates"): Barrier Nos. 8, 12, 16, 22, 26, 35, 37;

- ADAAG 405 ("Ramps"): Barrier Nos. 3, 4, 5, 7, 9, 15, 21, 23, 36;

- ADAAG 406 ("Curb Ramps"): Barrier Nos. 3, 4, 5, 7, 9, 10, 21, 23; and

- ADAAG 502 ("Parking Spaces"): Barrier Nos. 1, 13, 17, 20, 24, 27, 39.

It is clear that the Defendant's Property is not in 'strict compliance' with the ADAAG. Accordingly, the Court should hold that it is not 'readily accessible to and usable by individuals with disabilities.'

**6.      Plaintiff has standing to bring this action and seek injunctive relief with respect to Barrier Nos. 1-5, 7-10, 12, 13, 15-17, 20-24, 26, 27, 34-37, and 39.**

Plaintiff has standing to bring this action and seek injunctive relief with respect to Barrier Nos. 1-5, 7-10, 12, 13, 15-17, 20-24, 26, 27, 34-37, and 39. To establish standing under the

---

[6] Other provisions may be applicable due to defenses asserted by Defendant. For example, Plaintiff's expert has noted that ADAAG 404.2.4.4, which prohibits slopes exceeding 2.08% at door maneuvering clearances, has been violated at numerous store entrances. Defendant counters that this provision of the ADAAG is not violated due to the installation of power activated doors. *See* Def. Mot. for Summary Judgment, Dkt. No. 25, at 13. While Plaintiff disagrees, he notes – alternatively -- that ADAAG 404.3 (relating to automatic doors) would then apply, which includes similar prohibitions. Thus, additional arguments relating to ADAAG provisions not specifically included in this memo may arise at trial in response to arguments put forth by Defendant.

Further, the ADAAG is replete with cross-references to other portions of the ADAAG.

ADA, "a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and conduct complained of; and (3) that a favorable court ruling could redress the injury." *Norkunas v. Seahorse NB, LLC*, 444 Fed. Appx. at 415 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). "In addition to standing to bring suit, plaintiffs must have standing to bring each claim [regarding each alleged barrier] in the lawsuit." *Id*. (citing *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1002-03 (11th Cir. 2004)). "Injunctive relief requires a further showing of a plaintiff's actual or imminent injury." *Id*.

Further, "[o]nce a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III to bring his claim for injunctive relief forward." *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n. 5 (9th Cir. 2008) (citing *Lujan*, 504 U.S. at 560-61; *see also Fox v. Morris Jupiter Associates*, No. 05-80689, 2007 WL 2819522, at *6 (S.D. Fla. Sep. 25, 2007) (holding that a visual inspection could constitute "actual knowledge" because "the ADA cannot be read to require a plaintiff to subject himself to repeated discrimination by attempting to cross the threshold of each individual store"). The intent-to-return requirement is not limited to bona fide patrons, but also to "testers". *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013) (ADA plaintiff's status as a tester does not deprive him of standing).

In the instant action, Plaintiff suffered numerous injuries-in-fact when he visited Defendant's property and encountered difficulty with various architectural barriers. These include, *inter alia*, barriers relating to parking, curb ramps, entrances and sidewalks. Notably, all

of the barriers identified by Plaintiff's expert affect mobility-impaired individuals such as Mr. Khan.

Further, Plaintiff had actual knowledge of and/or encountered the barriers at issue before the Complaint was filed.  *Lujan's* proposition that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed" does not mean that one does not have standing if a barrier is not precisely described in a complaint.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n. 4 (1992).  Rather, the standard is merely that a plaintiff cannot have standing for barriers that he either did not have knowledge of or did not encounter prior to the complaint being filed.  The 'encounter / actual knowledge' is an easy threshold to meet in an ADA case, as noted by one Court:

> Defendants contend that Donald Smith's testimony when questioned about these alleged barriers is insufficient to establish actual knowledge.  While Donald Smith could not testify regarding the technical requirements of the ADA and could not recall the intricacies of the design of the facility, his testimony clearly reflects that he experienced difficulty navigating the Zoo with his disabled brother.  The fact that he could not recall every detail of every difficulty he experienced throughout a facility as large as the Zoo does not compromise his standing.

*Smith v. Lowry Park Zoological Society of Tampa, Inc.*, No. 07-333-TBM (M.D. Fla. Jan. 14, 2009), Dkt. No. 26-4, at 6.  Here, Mr. Khan has testified (by way of sworn Affidavit) as to his pre-Complaint knowledge with respect to all the barriers at issue.[7]

Plaintiff has likewise satisfied the threat-of-future-injury requirement.  Mr. Khan has visited Defendant's property numerous times in his life, and has receipts evidencing a July 10, 2013 visit.  In addition to his everyday shopping (he lives only 14 miles from the property), Plaintiff's spouse works in the area and there are numerous dining options in close proximity to the property.  Furthermore, Mr. Khan also intends to return to the property as an ADA tester to

---

[7]  Further, the Defendant declined to serve any discovery in this case, nor take the Plaintiff's deposition.

determine whether the identified barriers have been remedied, which establishes standing on its own in the Eleventh Circuit.

Since the future injury to Plaintiff is actual or imminent, the Court should conclude as a matter of law that Plaintiff is entitled to a declaration that Defendant is obligated to remove the barriers described herein.  Additionally, because Defendant has to date failed to remedy these barriers, Plaintiff is also entitled to an injunction requiring that such barriers be removed.

## V.  DISPUTED ISSUES OF LAW LIKELY TO ARISE AT TRIAL

Based on conversations with counsel for Defendant, it is anticipated that the following disputed issues of law will likely arise at trial.  Plaintiff's position with respect to these issues is summarized briefly herein.

### 1.  Whether Plaintiff has standing to maintain this action;

The Plaintiff has standing to assert this action.  Plaintiff is a paraplegic who clearly meets the definition of 'disabled' under the ADA.  It is undisputed that Plaintiff suffered the 'injury in fact' standing requirement as he encountered and had difficulty with numerous barriers at the property prior to filing suit.  Further, Plaintiff's intent-to-return is beyond dispute, as Plaintiff resides just 14 miles from the Property and has returned numerous times since litigation was commenced.  Barriers still exist at the property (addressed below).

### 2.  Whether the Defendant's property contains barriers which violate the relevant ADAAG standards;

Following Defendant's assertion that it had 'mooted' Plaintiff's claims by remediating the Property, the Court permitted Plaintiff's expert to re-inspect the property on July 9, 2015.  In his supplemental report, Plaintiff's expert reported (with measurements and photographic evidence) that of the twenty-seven (27) barriers Defendant purportedly claimed to fix, the Defendant only successfully removed thirteen (13) barriers.  Further, the Defendant admitted that

it did not *even attempt* to remove twelve (12) of the barriers previously identified by Plaintiff's

expert.  Accordingly, Defendant's Property contains twenty-six (26) violations of the ADAAG.

 **3.  If so, whether Defendant's alleged remediation efforts have rendered any of the remaining barriers moot;**

See above.  Twenty-six (26) barriers remain at the Property.

 **4.  Whether the ADA's 'new construction' standard applies in this case;[8]**

 The new construction standard applies in this case.  Defendant has already *admitted* that

the property components at issue were "constructed in 1999 or thereafter."  Dkt. No. 27-2 at ¶ 5.

Under the ADA, unlawful discrimination includes "a failure to design and construct facilities for

first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable

by individuals with disabilities, except where an entity can demonstrate that it is structurally

impracticable to meet the requirements" of the ADAAG. 42 U.S.C. § 12183(a)(1). "Failure to

abide by the Guidelines in new construction evidences intentional discrimination against

disabled persons." *Access Now, Inc. v. S. Florida Stadium Corp.*, 161 F. Supp. 2d 1357, 1362

(S.D. Fla. 2001); *see also Norkunas v. Seahorse NB, LLC*, 444 Fed. Appx. 412, 414 (11th Cir.

2011) (failure to construct new facilities as required by law constitutes intentional

discrimination).

 **5.  If the 'new construction' standard applies, whether a property is 'readily accessible to and usable by individuals with disabilities' is determined by compliance with the ADAAG; and**

 Whether a facility is 'readily accessible to and usable by individuals with disabilities' is

in turn defined by reference to the ADAAG architectural standards. *See, e.g., Norkunas*, 444 Fed.

Appx. at 416 ("All new construction should comply with the Attorney General's [ADA

---

[8] Plaintiff understands that the argument herein is repetitive with respect to previous sections of the brief.  However, the argument is repeated so that the Court may easily access the argument when the issues present themselves at trial.

Accessibility Guidelines], and the regulations require that all new construction (and alterations) shall comply with the issued standards"). This understanding is confirmed by the Department of Justice's guidance interpreting its own regulations. As noted in the DOJ's Technical Assistance Manual:

> *What is "readily accessible and usable?"* This means that facilities must be built in strict compliance with the Americans with Disabilities Act Accessibility Guidelines (ADAAG). There is no cost defense to the new construction requirements.

Title III Technical Manual, Dkt. No. 24-12 ("DOJ Manual"), at 62 (emphasis in original).

    **6.**    **Legal disputes related to the admissibility of evidence (including those raised in the forthcoming Motions in Limine).**

Pursuant to the Court's Case Management of Scheduling Order, Plaintiff anticipates filing various motions *in limine* at least three weeks prior to the commencement of trial.

DATE: December 1, 2015                Respectfully Submitted,

                                         **KU & MUSSMAN, P.A.**

                          By: *Louis Mussman, Esq.*
                                   Louis I. Mussman (Fla. # 597155)
                                   louis@kumussman.com
                                   Brian T. Ku (Fla. # 610461)
                                   brian@kumussman.com
                                   6001 NW 153rd Street, Suite 100
                                   Miami Lakes, Florida 33014
                                   Tel: (305) 891-1322
                                   Fax: (305) 891-4512

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of December, 2015, I electronically filed the

foregoing with the Clerk of Court by using CM/ECF system which will send notice of electronic

filing to the following:

    Karen A. Brimmer, Esq.
    Hinshaw & Culbertson LLP
    2525 Ponce de Leon Blvd, 4th Floor
    Coral Gables, Florida 33134

                                        */s/ Louis I. Mussman*
                                        Louis I. Mussman, Esq.