UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

QAISAR KHAN,

      Plaintiff,

v.                                     Case No: 8:14-cv-1683-T-17MAP

KIR TAMPA 003, LLC, a Foreign Limited
Liability Company,

      Defendant.

_____

ORDER GRANTING IN PART
AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

    This cause came before the Court pursuant to the *Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law* (Doc. No. 24) (the "**Plaintiff's Motion**") filed by the Plaintiff, Qaisar Khan (the "**Plaintiff**") and the *Defendant's Motion for Summary Judgment and Memorandum of Law in Support Thereof* (Doc. No. 25) (the "**Defendant's Motion**") filed by the Defendant, KIR Tampa 003, LLC (the "**Defendant**"). For the reasons set forth below, the Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART** and the Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

I.    **Introduction**

    There are several issues presented by the Plaintiff's Motion and Defendant's Motion. The primary issues are (i) whether the Plaintiff has standing to sue for violations of 42 U.S.C. §§ 12181, *et seq.* ("**Title III**") of the Americans with Disabilities Act of 1990 (the "**ADA**") that were not plead his *Complaint* (Doc. No. 1) (the "**Complaint**"), and which the Defendant claims it has eliminated through remediation efforts undertaken during the

pendency of this lawsuit; (ii) whether the Defendant is liable for violations of the ADA that have occurred on outparcels that are allegedly owned, leased, and operated by third-parties; and (iii) whether the fifty-six (56) consecutively numbered architectural barriers (the "**Barriers**") identified in the Plaintiff's Motion violate the ADA.

With respect to the first issue, to have standing, the Plaintiff must have had actual knowledge of each Barrier when the Complaint was filed.  Even so, the Defendant can moot the Plaintiff's claims by successfully eliminating the Barriers prior to trial.  Here, the undisputed facts and record evidence, taken in the light most favorable to the Plaintiff, give rise to a reasonable inference that the Plaintiff had actual knowledge of all fifty-six (56) Barriers when the Complaint was filed.  The undisputed facts and record evidence further demonstrate that, as of the entry of this order, the Defendant has only successfully eliminated thirteen (13) of the alleged Barriers.  As a result, summary judgment is only appropriate with respect to the thirteen (13) Barriers that have eliminated based on the ground of standing.

With respect to the second issue, the Defendant must be the owner, lessor, or operator of a place of public accommodation in order to be held liable under Title III.  While the Defendant's status as an owner or lessor is not in dispute, the parties disagree regarding whether the Defendant is an "operator" of various outparcels located around and adjacent to the Defendant's property.  To be deemed an operator under Title III, the defendant must exercise some degree of control over the Barriers that allegedly violate the ADA.  Here, the undisputed facts and record evidence, taken in the light most favorable to the Plaintiff, demonstrate six (6) Barriers are located on outparcels that the

Defendant does not own, lease, or operate.  As a result, summary judgment is appropriate with respect to six (6) of the Barriers on that basis.

Finally, a review of Title III and applicable caselaw demonstrates that this case is governed by the new construction standard.  Under this standard, the Plaintiff is required to submit evidence that the Defendant failed to design and construct facilities that are readily accessible to individuals with disabilities.  To do so, the Plaintiff must cite to evidence that the Barriers violate the ADA Accessibility Guidelines (the "**Guidelines**") promulgated by the United States Attorney General's Office.  Upon review, the undisputed facts and record evidence demonstrate that the Plaintiff is entitled to summary judgment with respect to four (4) Barriers for violating the Guidelines.  As to the remainder of the Barriers, genuine issues as to material facts preclude summary judgment in favor of either party.

## II.    Background

### A.    Procedural Background

The Plaintiff filed the Complaint on July 10, 2014, alleging violations of Title III of the ADA.  The Defendant filed its *Answer and Affirmative Defenses to Complaint* (Doc. No. 13) (the "**Answer**") on September 24, 2014.

The Plaintiff filed the Plaintiff's Motion on May 5, 2015, and the Defendant filed the Defendant's Motion on May 13, 2015.  In the Plaintiff's Motion, the Plaintiff seeks summary judgment on several issues, including whether (i) the Defendant is an owner and/or operator of a "place of public accommodation;" (ii) the Plaintiff is disabled; (iii) the "new construction standard" applies; and (iv) the Plaintiff has standing to sue for violations of Title III.  In addition, the Plaintiff identifies fifty-six (56) Barriers that he alleges violate Title III, and asks the Court to enter summary judgment with respect to Barrier Nos. 1, 3-

5, 7-9, 11, 14, 15, 16, 18, 19, 21, 22, 23, 25, 26, 27, 28-33, 35, 36, and 37-39.  In the Defendant's Motion, the Defendant seeks summary judgment on the issues of standing, mootness, and the Plaintiff's entitlement to attorney's fees and costs.  The Defendant also asks the Court to enter summary judgment as to Barrier Nos. 1, 2, 10, 12, 13, 17, 20, 24, 27, 34, 35, and 40-56, which it argues do not violate the ADA.

The Plaintiff filed the *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* (Doc. No. 26) (the "**Plaintiff's Response**") on May 18, 2015.  In the Plaintiff's Response, the Plaintiff (i) asks the Court to strike various portions of the record submitted in support of the Defendant's Motion, (ii) submits an affidavit by the Plaintiff in response to the Defendant's standing argument, and (iii) asks the Court to also grant summary judgment in his favor as to Barrier Nos. 2, 10, 12, 13, 17, 20, 24, and 34. The Defendant filed the *Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment* (Doc. No. 27) (the "**Defendant's Response**") on May 22, 2015, through which it responds to the Plaintiff's Motion.

On June 2, 2015, the Plaintiff filed *Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment* (Doc. No. 30) (the "**Plaintiff's Reply**"). Thereafter, on June 25, 2015, the Defendant filed a *Notice of Filing Affidavit of Jerry Bouche in Support of Defendant's Motion for Summary Judgment* (Doc. No. 35) (the "**Defendant's Reply**"), which consisted of an affidavit regarding the Defendant's efforts to remediate certain of the Barriers identified in the Plaintiff's Motion.  Finally, on July 31, 2015, the Plaintiff filed *Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment* (Doc. No. 37) (the "**Plaintiff's Sur-Reply**"), through which the Plaintiff

4

conceded that the Defendant's remediation efforts had successfully eliminated Barrier Nos. 6, 11, 14, 18, 19, 25, 28-33, and 38, but otherwise denied that any of the other fifty-six (56) Barriers had been eliminated.

### B. Factual Background

The Defendant is the owner of the real property and improvements at the Plaza at Citrus Park in Tampa, Florida (the "**Plaza**"). (Defendant's Response, at Ex. 2; Plaintiff's Response, at Ex. 1).  The Plaza consists of a shopping center that is open to the public and first came under construction in 1999. (Defendant's Response, at Ex. 2).  Located around and adjacent to the Plaza are various outparcels, which are owned and leased by third-parties. (Plaintiff's Response, at Ex. 1).  The Plaintiff and Defendant disagree regarding whether the Defendant is an "operator" of the outparcels. (Plaintiff's Response, at Ex. 1).

The Plaintiff is paralyzed from the waist down and relies on a wheelchair for mobility. (Defendant's Response, at Ex. 2).  The Plaintiff claims that he has visited the Plaza numerous time, and plans to continue doing so in the future. (Defendant's Response, at Ex. 2).  During the Plaintiff's visits to the Plaza, he claims to have encountered various architectural Barriers that hindered his access to the premises. (Defendant's Response, at Ex. 2).  Barrier Nos. 1 through 39 are located at the Plaza itself, while Barrier Nos. 40 through 56 are located at or around the outparcels.

After the Plaintiff filed the Complaint, the Defendant hired an expert who agreed that twenty-two (22) of the fifty-six (56) Barriers identified in the Plaintiff's Motion violated the ADA. (Defendant's Response, at Ex. 2).  The Defendant ultimately undertook efforts to eliminate twenty-seven (27) Barriers, at a cost of approximately $200,000. (Defendant's Response, at Ex. 2).  While the Defendant contends that the Plaintiff's expert has not

provided a structurally practicable method by which each Barrier could be removed, the Defendant admits and stipulates that "it has the financial means to perform the required and appropriate ADA modifications to the subject property." (Defendant's Response, at Ex. 2).

The Plaintiff agrees that the Defendant's remediation efforts eliminated thirteen (13) of the twenty-seven (27) Barriers. (Doc. No. 37).  As a result, the parties currently dispute the existence of twenty-six (26) Barriers, which consist of fourteen (14) Barriers the Plaintiff claims were not eliminated as a result of the Defendant's remediation efforts and twelve (12) other Barriers that the Defendant claims never violated the ADA.  In addition, the parties dispute whether the Defendant has any obligation to eliminate the sixteen (16) Barriers that are located on or around outparcels (the "**Outparcel Barriers**").

III.   **Legal Analysis**

   A.   **Preliminary Matters**

      1.   *Plaintiff's Evidentiary Objections under Federal Rule 26(a)(2)*

In the Plaintiff's Response, the Plaintiff asks the Court to strike portions of an expert affidavit (the "**Schneider Affidavit**") submitted in support of the Defendant's Motion. According to the Plaintiff, portions of the Schneider Affidavit exceed the scope of the expert report that was previously submitted by the Defendant's expert, Mr. Schneider (the "**Schneider Report**").

Under Federal Rule[1] 26(a)(2), "a party must disclose to the other parties the identity of any [expert witnesses] it may use at trial," along with a written report that contains, among other things "a complete statement of all opinions the witness will

---

[1] All references to the "Federal Rules" or to a "Federal Rule" are to the Federal Rules of Civil Procedure.

express and the basis and reasons for them," and "the facts or data considered by the witness in forming them." <u>Fed. R. Civ. P.</u> 26(a)(2)(A) & (B).   "A party must make these disclosures at the times and in the sequence that the court orders," and "must supplement these disclosures" upon learning that they are "incomplete or incorrect." <u>Fed. R. Civ. P.</u> 26(a)(D) & (e). "Any additions or changes to [the information contained in an expert's report] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." <u>Fed. R. Civ. P.</u> 26(e)(2).  "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." <u>Fed. R. Civ. P.</u> 37(c)(1).

In light of the foregoing, "courts will not admit supplemental expert evidence following the close of discovery when it 'expounds a wholly new and complex approach designed to fill a significant and logical gap in the first report,' as doing so 'would eviscerate the purpose of the expert disclosure rules.'" *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F.Supp.2d 269, 279 (S.D.N.Y. 2011).  "However, to the extent that an expert affidavit is within the scope of the initial expert report, it is properly submitted in conjunction with dispositive motions even outside the time frame for expert discovery." *Id.* As a result, courts will not strike otherwise belated expert affidavits that "provide evidentiary details for the conclusions originally espoused" in the expert's report. *Id.*

Here, the Plaintiff asks the Court to exclude certain portions of the Schneider Affidavit from the record on summary judgment because they purportedly "exceed the scope and opinions of his report." In particular, the Plaintiff notes that (i) sub-paragraphs

14a, l, and aa of the Schneider Affidavit should be excluded because they add new grounds for denying the Defendant's liability under the ADA; (ii) sub-paragraphs 14b and mm of the Schneider Affidavit should be excluded for referencing inspections and measurements that Mr. Schneider performed that were not mentioned in the Schneider Report, and (iii) sub-paragraphs 14h, o, v, z, and ii of the Schneider Affidavit should be excluded for adding new arguments and/or conclusions not present in the Schneider Report.

With respect to the first category of sub-paragraphs, the Plaintiff complains that the Schneider Report states that the .3% differential between the slope of the parking space and the allowances permitted under the Guidelines is "minimal" and a "non-issue," while the corresponding paragraph of the Schneider Affidavit provides that the .3% differential "is a permissible construction building industry tolerance that does not constitute a violation of the ADA" under Section 3.2 of the 1991 Guidelines and Section 104.1.1 of the 2010 Guidelines. *See* (Schneider Affidavit, at 3-4; Schneider Report, at 6). The Court does not believe the addition of the reference to Sections 3.2 and 104.1.1 of the Guidelines go beyond the scope of the Schneider Report.   Rather, the Schneider Affidavit adds evidentiary support to the conclusions and opinions espoused in the Schneider Report.

As to the second category of sub-paragraphs, the Plaintiff asks the Court to exclude portions of the Schneider Affidavit that were based on a previously undisclosed "inspection of the premises."  The Plaintiff notes that the Schneider Report did not mention that Mr. Schneider had performed a physical inspection of the Plaza, and instead states that Mr. Schneider based his opinions on photographic evidence. *See* (Schneider

Affidavit, at 4; Schneider Report, at 6).   However, in making this argument, the Plaintiff completely ignores the fact that the opinions expressed in the Schneider Report and Schneider Affidavit regarding Barrier Nos. 2 and 13 are virtually *identical*. *See* (Schneider Affidavit, at 4; Schneider Report, at 6).   The Plaintiff also ignores the fact that he took Mr. Schneider's deposition on April 29, 2015, which is *after* he performed the previously undisclosed inspections, and *before* the parties filed their motions for summary judgment. Given those circumstances, the Court is at a loss to understand how Mr. Schneider's inspections of the Defendant's property came as a surprise to the Plaintiff, and even if they did, the fact that the opinions expressed in the Schneider Report and Schneider Affidavit are virtually identical militates against excluding the Schneider Affidavit from the record.

The Plaintiff's bases for challenging the third category of sub-paragraphs are equally trivial and unpersuasive.   Here, the Plaintiff takes issue with the fact that the Schneider Report states that the permitted allowance under Table 405.2 is "10%," while the Schneider Affidavit expresses that allowance as "1:10." *See* (Schneider Affidavit, at 8-9; Schneider Report, at 12).   In so doing, the Plaintiff again ignores the fact that the Schneider Report and Schneider Affidavit both express the *same* opinion: that the curb ramp described as Barrier No. 15 does not violate the ADA because the slope is within the allowances permitted under applicable law.   The Plaintiff's arguments are entirely lacking in substance, and will not be entertained further.

In sum, the Court is of the view that the Schneider Affidavit merely "provides evidentiary details for the conclusions originally espoused" in the Schneider Report, and does not expound "a wholly new and complex approach designed to fill a significant and

logical gap" in Mr. Schneider's report.  As a result, the Court will decline the Plaintiff's invitation to exclude the referenced sub-paragraphs of the Schneider Affidavit from the record on summary judgment.

    2.    *Plaintiff's Evidentiary Objections under Evidence Rule[2] 702*

The Plaintiff also argues that certain of Mr. Schneider's opinions should be excluded under Evidence Rule 702.  Evidence Rule 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training or education may testify regarding an area of specialized knowledge provided that (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Cedar Petrochemicals*, 769 F.Supp.2d at 281.  "The rejection of expert testimony [under Evidence Rule 702] is the exception rather than the rule." *Id.* at 282.  "This principle is based on the recognition that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id.* Accordingly, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 286.  Moreover, in the context of a bench trial, the Court's gatekeeping function under Evidence Rule 702 "is less essential than with a jury trial." *Butler v. McNeil*, 2008 WL 2916302, at *1 (M.D. Fla. July 24, 2008).

Applying the foregoing concepts to the facts of this case, the Court believes the most appropriate way for the Plaintiff to challenge Mr. Schneider's opinions is through vigorous cross-examination and presentation of contrary evidence.  The fact that Mr.

---

[2] All references to an "Evidence Rule" or the "Evidence Rules" are to the Federal Rules of Evidence.

Schneider may have based some of his opinions on caselaw, as opposed to some other source of information, does not necessitate the exclusion of Mr. Schneider's opinions. The Plaintiff's concerns may rightfully impact the weight the Court should afford Mr. Schneider's opinions, but the arguments raised in the Plaintiff's Response do not sufficiently undermine Mr. Schneider's qualifications, the quality of his facts or data, or the reliability of his opinions to warrant exclusion from the record on summary judgment under Evidence Rule 702.

### B.    Summary Judgment Standard

Having disposed with all preliminary matters, the Court must decide whether to grant either party summary judgment with respect to any or all of the fifty-six (56) Barriers identified in the Plaintiff's Motion. "Summary judgment is appropriate only when the Court is satisfied that 'there is no genuine issue as to any material fact' and the moving party is entitled to judgment as a matter of law." *Houston v. Hess Corp.*, 2014 WL 1047239, at *1 (M.D. Fla. Mar. 18, 2014) (citing Fed. R. Civ. P. 56(c)). "The moving party bears the burden of showing the absence of any genuine issue of material fact." *Id.* "In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party." *Id.* Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment." *Id.* "Failure to show sufficient evidence of any essential element is fatal to the claim, and the Court should grant summary judgment." *Id.* "Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied." *Id.*

C.    Overview of Title III

To determine whether summary judgment is appropriate, the Court must consider the statutory framework Congress created by enacting Title III. Section 12182(a) of title 42 of the United States Code provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

"Congress created two standards of compliance for the accessibility of public accommodations by defining the term 'discrimination' based on the age of the building." *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 414 (11th Cir. 2011). "Buildings that pre-existed the enactment of the ADA must meet the readily 'achievable standard,' and buildings constructed after the enactment of the ADA must meet the new construction or alternations standard." *Id.* The ADA was enacted on July 26, 1990, and buildings constructed "for first occupancy later than 30 months after July 26, 1990" are required to comply with the new construction standard." 42 U.S.C. § 12183. Here, there is no dispute that construction on the Plaza began in 1999 and, as a result, the new construction standard governs whether the Plaza complies with the ADA.

A plaintiff who can establish discrimination under Title III of the ADA is "entitled to "[t]he remedies and procedures set forth in [42 U.S.C. §] 2000a-3(a)," including the right to seek injunctive relief. 42 U.S.C. §§ 12188 & 2000a-3(a). "[I]injunctive relief shall include an order to alter facilities to make such facilities readily accessible and usable by individuals with disabilities." 42 U.S.C. § 12199(a)(2). In addition, "the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including

litigation expenses, and costs." 42 U.S.C. § 12205.  With these concepts in mind, the

Court will proceed to consider the various arguments raised in the parties' pleadings.

**D.      Plaintiff's standing to sue for violations of the ADA that were not plead in the Complaint and/or have been rendered moot by the Defendant's remediation efforts**

*1.     Standing to sue for barriers not identified in Plaintiff's Complaint*

As an initial matter, the Defendant argues that the Plaintiff lacks standing to sue

for any violations of Title III that were not alleged or referenced in the Plaintiff's Complaint.

"To have standing under Article III, a plaintiff must show that (1) he has suffered an injury-

in-fact, (2) there is a causal connection between the injury-in-fact and the challenged

action of the defendant, and (3) that the injury will be redressed by a favorable decision."

*Smith v. Lowry Park Zoological Soc'y of Tampa, Inc.*, Case No. 8:07-CV-333-T-27TBM,

at *4 (M.D. Fla. Jan. 14, 2009).  "In addition, to seek injunctive relief, a plaintiff must allege

a real and immediate --- as opposed to a merely conjectural or hypothetical --- threat of

*future* injury." *Id.* (emphasis in original).   "Whether a plaintiff has standing to sue is

determined as of the date the lawsuit is commenced." *Id.*

Nevertheless, as Judge Whittemore noted in the *Lowry Park* case, "[a] plaintiff

does not have to encounter every barrier in order to have standing to sue, so long as the

plaintiff has actual knowledge of each barrier." *Id.*  The three primary ways in which a

plaintiff can acquire such "actual knowledge" are by "encountering the barrier, personally

observing the barrier, or by expert findings." *Id.*  The critical requirement, however, is that

the plaintiff have obtained actual knowledge of the Barriers "prior to the complaint being

filed." *Id.*  This is because "only actual knowledge obtained prior to the commencement

of the lawsuit can be considered for the purposes of establishing standing." *Id.* at 7; *see*

*also Resnick v. Magical Cruise Co.*, 148 F.Supp.2d 1298, 1302 (M.D. Fla. 2001) ("A

plaintiff may have 'actual notice' . . . by either having 'encountered discrimination or having learned of the alleged violations through expert findings or personal observation.'").

Here, the Defendant argues that summary judgment is appropriate with respect to Barrier Nos. 8, 12, 13, 15-17, 20, 22-29, 31, 34, 36-38, 41-51, 53, and 54, which were not specifically identified in the Complaint (the "**Unidentified Barriers**").   In support, the Defendant notes that the Plaintiff identified several alleged Barriers in sub-paragraphs 14a – 14d of the Complaint, but that paragraph 15 of the Complaint goes on to state that "there are other current violations . . . and only after a full inspection is performed by the Plaintiff . . . can all said barriers be identified."   This, according to the Defendant, constitutes an admission by the Plaintiff that he lacked actual knowledge of the Unidentified Barriers when the Complaint was filed.   The Plaintiff, for his part, denies that he lacked actual knowledge of the Unidentified Barriers, and has submitted an affidavit stating that "[p]rior to filing the Complaint in this action, I encountered and/or observed all of the [B]arriers."

Upon review, the Court does not read the Plaintiff's statement in paragraph 15 of the Complaint as being an admission that he lacked knowledge of the Unidentified Barriers when the Complaint was filed.   In fact, read in its proper context, paragraph 14 states that "Defendant is in violation of [Title III] and is discriminating against the Plaintiff due to, *but not limited to*, their (sic) failure to provide and/or correct, the architectural barrier to access below . . ." (Complaint, at ¶ 14) (emphasis added).   Since the Plaintiff used the qualifier "but not limited to" when referring to the specific Barriers identified in sub-paragraphs 14a – 14d of the Complaint, the admission that all barriers could only be identified "after a full inspection" does not necessitate the conclusion that the Plaintiff

lacked actual knowledge of the Unidentified Barriers when he filed the Complaint. Moreover, the affidavit submitted by the Plaintiff creates, at minimum, a triable issue as to whether the Plaintiff had actual knowledge of the Unidentified Barriers prior to filing the Complaint. Accordingly, drawing all inferences in favor of the Plaintiff, the Defendant is not entitled to summary judgment based on the Plaintiff's alleged lack of actual knowledge of the Unidentified Barriers.

2.     *Standing to sue for Barriers that have been rendered moot by the Defendant's remediation efforts*

As Judge Whittemore noted in *Lowry Park*, a "party asserting mootness carries a heaving burden of persuasion" because:

> [i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with that principle, the standard [the Eleventh Circuit] has announced for determining whether a case has been mooted by the defendant's voluntary conduct is *stringent*: A case *might* become moot if subsequent events make it *absolutely clear* that the allegedly wrongful behavior *could not reasonably be expected to occur.*

Case No. 8:07-CV-333-T-27TBM, at *8 (emphasis in original) (quoting *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183-84 (11th Cir. 2007)). "Factors relevant to whether a case is mooted by a defendant's voluntary cessation include: (1) whether the challenged conduct was isolated or intentional, (2) whether the defendant's cessation of the offending conduct was motivated by a change of heart or timed to anticipate suit, and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Id.* at 9.

Applying the foregoing factors to the facts of this case, it appears that the challenged conduct was somewhat pervasive throughout the Defendant's property. In particular, the Defendant's own expert recommended making modifications to eliminate

at least twenty-two (22) of the fifty-six (56) Barriers identified in the Plaintiff's Motion. After performing those modifications, the Plaintiff acknowledged that the following thirteen (13) Barriers had been eliminated: Barrier Nos. 6, 11, 14, 18, 19, 25, 28-33, and 38 (the "**Eliminated Barriers**"). Nevertheless, the Plaintiff claims that the following twenty-six (26) Barriers still exist: Barrier Nos. 1, 2, 3-5, 7-9, 10, 12, 13, 15-17, 20-24, 26, 27, 34-37, and 39; not to mention the sixteen (16) Outparcel Barriers. As to the second factor, it seems clear that the modifications occurred as a direct result of the filing of the Plaintiff's lawsuit. As to the final factor, despite the parties' disagreement regarding whether the twenty-six (26) Barriers identified above violate the ADA, the Defendant has acknowledged that at least twenty-two (22) Barriers violated the ADA. (Doc. No. 27-2, at 5). In sum, the Court believes that, after weighing the foregoing factors, the Defendant's remediation efforts have only mooted the thirteen (13) Eliminated Barriers. As a result, the Plaintiff has standing to seek injunctive relief as to the remaining Barriers that he claims violate the ADA.

### E. Elements of a prima facie case under Title III

Having dealt with the Defendant's challenges to the Plaintiff's standing, the Court must now consider whether the Plaintiff has carried its burden of establishing a prima facie case under Title III of the ADA. "For a plaintiff to establish a *prima facie* case under Title III of the ADA, a plaintiff must establish" the following elements: (1) the plaintiff is disabled, (2) the defendant owns, leases, or operates a place of public accommodation, and (3) the plaintiff was denied full and equal enjoyment provided by the public accommodation because of his disability. *Nat. Alliance for Accessability, Inc. v. McDonald's Corp.*, 2013 WL 6408650, at *9 (M.D. Fla. Dec. 6, 2013).

1.     *Element 1: Whether Plaintiff is disabled*

With respect to the first element, there is no dispute that the Plaintiff is disabled, as he is paralyzed and confined to a wheelchair.  As a result, the undisputed facts and record evidence are sufficient to entitle the Plaintiff to partial summary judgment as to his status of being disabled.

2.     *Element 2: Whether Defendant is the owner, lessor, or operator of a place of public accommodation*

With respect to the second element, it is undisputed that the Defendant *is* the owner, lessor, and/or operator a place of public accommodation with respect to Barrier Nos. 1 through 39.  In addition, it is undisputed that the Defendant is *not* an owner or lessor of a place of public accommodation with respect to the Outparcel Barriers. However, the parties dispute whether the Defendant is an *operator* of the outparcels and, by extension, whether the Defendant is an operator of a place of public accommodation with respect to the Outparcel Barriers.

For its part, the Defendant submits evidence (in the form of an affidavit by Gary Bazyldo, regional general counsel for the limited partnership that owns the Defendant) that the Defendant does not own, lease, or operate any of the outparcels located at or around the Plaza, which include Smokey Bones Restaurant, Jared Jewelry Store, Verizon Wireless, Longhorn Steakhouse Restaurant, Olive Garden Restaurant, Ethan Allen Furniture, Chili's Restaurant, and DQ Grill.  According to Mr. Bazyldo, the "Defendant does not receive income from any of the outparcel owners either by land lease or from physical plant operations." (Defendant's Motion, at Ex. 5).  Rather, the "only monies received by Defendant regarding the outparcels is an annual fee by each outparcel business to maintain the common area green space and driveways adjacent to the

outparcel's demised areas." (Defendant's Motion, at 6).   In response, the Plaintiff contends that because the Defendant collects annual fees from the outparcel owners to maintain common areas and driveways, the Defendant is an "operator" with respect to the Outparcel Barriers.

"There are two prevalent theories used to determine who is an operator under the ADA." *U.S. v. Days Inns of America, Inc.*, 22 F.Supp.2d 612, 616 (E.D. Ky. 1998).   The first test, which has been applied in the context of franchisor-franchisee relationships, focuses on whether the alleged operator actually causes the franchisee to comply or not to comply with the ADA. *Id.*   The second test focuses on whether the alleged operator maintains control over the day-to-day operations of the place of public accommodation. *Id.* at 617.   Other courts that have considered the issue have construed the term "operates" within "its ordinary and natural meaning," as "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage." *Simenson v. Hoffman*, 1995 WL 631804, at *5 (N.D. Ill. Oct. 24, 1995).

In considering the parties' arguments, the Court believes it is helpful to subdivide the Outparcel Barriers as follows: (i) Barrier Nos. 41, 42, 44, 47, 50, and 54, which are located at or around the entrances to certain of the outparcels, and (ii) Barrier Nos. 40, 43, 45, 46, 48, 49, 51, 52, 53, 55, and 56, which are located at or around designated accessible parking spaces, curb ramps, and sidewalks that service the outparcels.  With respect to the first category of Outparcel Barriers, the record is devoid of any evidence that the Defendant exerted any control over ensuring that the entranceways to the outparcels comply with the ADA.  Similarly, the record is devoid of any evidence that the Defendant has control over the day-to-day operations of the brick-and-mortar locations

where the outparcels' owners conduct business.  The same cannot be said, however, for the second category of Outparcel Barriers, as the Defendant has admitted that it is responsible for maintaining common areas and "driveways adjacent to the outparcel's demised areas."  Viewed in the light most favorable to the Plaintiff, the admission that the Defendant maintains common areas and driveways is sufficient to give rise to a reasonable inference that the Defendant maintains a sufficient degree of control over the second category of Outparcel Barriers to withstand summary judgment.  Accordingly, the Court will grant partial summary judgment in favor of the Defendant as to Barrier Nos. 41, 42, 44, 47, 50, and 54, and deny summary judgment as to the remainder of the Outparcel Barriers.

       3.    *Element 3: Whether the Defendant's property contains Barriers that violate the ADA*

The third element a plaintiff must establish to make a prima facie showing of discrimination under Title III is that he was denied full and equal enjoyment provided by the public accommodation because of his disability.  As noted above, this case is governed by the new construction standard.  Under the new construction standard, discrimination includes "a failure to design and construct facilities . . . that are *readily accessible to* and usable by individuals with disabilities." 28 U.S.C. § 12183(a)(1) (emphasis added).[3]  In addition, "with respect to a facility or part thereof that is altered,"

---

[3] There is an exception to the "readily accessible" standard for situations where "it is structurally impracticable to meet the requirements" set forth under the Guidelines. *Id.* Nowhere in the Defendant's Response does the Defendant cite to evidence that removing any of the Barriers would be structurally impracticable.  In fact, the Defendant stipulates that it has the financial resources to "perform the required and appropriate ADA modifications to the subject property."  As a result, the Defendant has not carried its burden of citing to evidence that it would be structurally impracticable to eliminate any Barriers that are determined to violate the ADA.

discrimination includes "a failure to make alternations in such a manner that, to the *maximum extent feasible*, the altered portions of the facility are *readily accessible to* and usable by individuals with disabilities." 28 U.S.C. § 12183(a)(2) (emphasis added).

"A facility is generally '*readily accessible*' within the meaning of the ADA if it complies with the [Guidelines]." *Kohler v. Bed Bath & Beyond of California, LLC*, 778 F.3d 827, 830 (9th Cir. 2015) (emphasis added). There are two sets of potentially applicable Guidelines: the 1991 Guidelines and the 2010 Guidelines. *Id.* "The 2010 Guidelines went into effect on March 15, 2012." *Id.* However, the 2010 Guidelines contain a "safe harbor provision under which a building that complied with the 1991 Guidelines and has not been altered on or after March 15, 2012 will not be required to make any changes to comply with the 2010 Guidelines." *Id.* On this point, it is important to note that "[n]ot every change to an existing facility" constitutes an "alteration." *Norkunas*, 444 F. App'x at 418. Rather, to qualify as an "alteration," the change must "affect the usability of the building or facility or any part thereof." *Id.* (citing 28 C.F.R. § 36.402).

Since the Plaza was constructed after 1999, but before March 15, 2012, the Defendant is subject to the 1991 Guidelines with respect to any Barriers that complied with the 1991 Guidelines and have not been altered subsequent to Mach 15, 2012. However, the 2010 Guidelines apply to any Barriers that were altered after March 15, 2012. As a result, the Plaintiff makes a prima facie case of discrimination under Title III of the ADA by pointing to evidence that the Barriers do not comply with the 1991 Guidelines or, as a result of alterations performed after March 15, 2012, do not comply with the 2010 Guidelines.

In determining whether the Plaintiff has met this burden, it is helpful to further divide the Barrier Nos. 1 through 39 into the following categories: (i) Barrier Nos. 1, 2, 10, 12, 13, 16, 17, 20, 24, 27, 34, and 35, which the Defendant claims did not violate the Guidelines when the Complaint was filed; and (ii) Barriers 3-5, 7-9, 15, 21-23, 26, 36, 37, and 39, which the Defendant admits may have violated the Guidelines when the Complaint was filed, but which the Defendant claims to have eliminated through its remediation efforts.

### a.   Barriers the Defendant claims did not violate the Guidelines when the Complaint was filed.

As stated above, the Defendant claims that Barrier Nos. 1, 2, 10, 12, 13, 16, 17, 20, 24, 27, 34, and 35 did not violate the Guidelines when the Complaint was filed.  These Barriers can be further subdivided into the following groups for purposes of ruling on the parties' motions for summary judgment.

> i.   Barriers the Defendant claims do not violate the Guidelines because any excessive slopes are minimal and/or within acceptable industry tolerances

Barrier Nos. 1, 12, and 27 relate to slopes that exceed the maximum amounts allowed under the Guidelines, but which the Defendant claims are so minimal to fall within acceptable industry tolerances.  Section 104.1.1 of the 2010 Guidelines provides that "[a]ll dimensions are subject to conventional industry tolerances except where the requirement is stated as a range with specific minimum and maximum end points."  The advisory notes to Section 104.1.1 state that where a requirement is stated in terms of a specific range, "the range provides an adequate tolerance and therefore no tolerance outside of the range at either end point is permitted."  An example of such a requirement can be found in Section 609.4 of the 2010 Guidelines, which requires grab bars to be installed between

33 and 36 inches above the floor.  In contrast, according to Section 104.1.1, industry "tolerances *may* apply" where "a requirement is a minimum or maximum dimension that does not have two specific minimum and maximum end points." (emphasis added). According to the Guidelines, an example of a situation where industry tolerances *may* apply is where an element is required to be installed at "15 inches minimum" or "5 pounds maximum."

Turning to the specific Guidelines implicated by Barrier Nos. 1, 12, and 27, Section 502.4 of the 2010 Guidelines states that "[a]ccess aisels shall be at the same level as the parking spaces they serve," and that "[c]hanges in level are not permitted."  The only noted exception to this rule is that "[s]lopes not steeper than 1:48 [or approximately 2.1%] shall be permitted."  Similarly, Section 404.2.4.4 of the 2010 Guidelines states that "[f]loor or ground surface within required maneuvering clearances shall comply with 302," and that "[c]hanges in level are not permitted."  Similarly, the only noted exception to Section 404.2.4.4 is that "[s]lopes not steeper than 1:48 [or approximately 2.1%] shall be permitted."

The Plaintiff contends that the industry tolerances described in Section 104.1.1 do not apply to Sections 502.4 and Section 404.2.4.4 because the maximum slopes allowed under those rules are expressed in terms of a range.  The Defendant, on the other hand, contends that the slopes allowed under Section 502.4 and Section 404.2.4.4 are expressed in terms of a maximum or minimum dimension, such that industry tolerances under 104.1.1 can apply.  The Plaintiff's argument is based on the flawed premise that Sections 502.4 and 404.2.4.4 express their requirements in terms of a range between 0 and 1:48.  This is simply not the case.  Sections 502.4 and 404.2.4.4 both state that

"[s]lopes not steeper than 1:48 shall be permitted." Unlike Section 609.4, which requires grab bars to be installed between 33 and 36 inches above the floor, the requirements of Sections 502.4 and 404.2.4.4 refer to a single, maximum allowable slope; thus implicating the industry tolerances set forth in Section 104.1.1. As a result, the Plaintiff is not entitled to summary judgment as to Barrier Nos. 1, 12, and 27.

The Defendant, on the other hand, is not entitled to summary judgment on Barrier Nos. 1, 12, and 27; albeit for different reasons. For starters, the Defendant's expert has not provided any detail regarding the range of appropriate industry tolerances applicable to Barrier Nos. 1, 12, and 27. Rather, the Defendant's expert has simply opined that the amount by which the slopes identified in Barrier Nos. 1, 12, and 27 exceeded the amounts allowed under Sections 502.4 and 404.2.4.4 are "minimal." Given the dearth of record evidence regarding the appropriate industry tolerances, the Defendant is not entitled to summary judgment as to Barrier Nos. 1, 12, and 27.

        ii.        <u>Barriers the Defendant claims do not exist because the Guidelines permit power activated doors in lieu of having level surfaces</u>

The Defendant claims that Barrier Nos. 12, 16, and 35 do not violate the ADA because the 1991 Guidelines permit a place of public accommodation to have power activated doors in lieu of level surfaces. In support, the Defendant cites Section 4.13.6 of the 1991 Guidelines, which states that "[m]inimum maneuvering clearances at doors that are not automatic or power-assisted shall be as shown in Fig. 25." Section 404.3.2 of the 2010 Guidelines, on the other hand, states that "[c]learances at power-assisted doors and gates shall comply with 404.2.4." Section 404.2.4.4 goes on to provide that "[f]loor or ground surface within required maneuvering clearances shall comply with 302,"

and that "[c]hanges in level are not permitted."   The only noted exception to Section 404.2.4.4 is that "[s]lopes not steeper than 1:48 [or approximately 2.1%] shall be permitted."

The Plaintiff's expert measured the ground surface slope within the required door maneuvering clearance for Barrier Nos. 12, 16, and 35 at 2.2%, 3.4%, and 3.8%, respectively.   The Defendant's expert does not disagree with the Plaintiff's slope measurements, but contends that the excessive slopes are permissible because the Barriers are located in areas that are serviced by power doors.   Since the Defendant's argument is premised on Section 4.13.6 of the 1991 Guidelines, the Defendant must be able to qualify for the "safe harbor" exemption from the 2010 Guidelines. *See* 28 CFR § 35.150(b)(2)(i).   To qualify for the "safe harbor" exception, the Defendant must, at minimum, cite to record evidence that the power doors servicing Barrier Nos. 12, 16, and 35 were installed prior to Mach 15, 2012, and were not subsequently modified in such a manner as to trigger the applicability of the 2010 Guidelines.   Here, the record is entirely devoid of any evidence regarding the date the power doors were installed.   As a result, the Court believes the determination of whether Barrier Nos. 12, 16, and 35 violate the ADA is best resolved at trial.

        iii.    <u>Barriers that the Defendant claims do not exist because any wet or slippery areas are not located in areas where disabled patrons would be required to travel</u>

The Defendant claims that Barrier Nos. 17, 20, and 24 do not violate the ADA because the wet or slippery areas identified by the Plaintiff are not located in areas where disabled patrons would be required to travel.  Section 502.4 of the 2010 Guidelines states that "[p]arking spaces and aisles serving them shall comply with 302."  Section 302.1, in

turn, provides that "[f]loor and ground surfaces shall be stable, firm, and slip resistant." The advisory notes to Section 302.1 state that "[a] slip-resistant surface provides sufficient frictional counterforce to the forces exerted in walking to permit safe ambulation." Here, the Plaintiff's expert states that Barrier Nos. 17, 20, and 24 exist due to "some visible ponding occurring in the parking space and access aisles." (Sullivan Report, at 9). The Defendant's expert states that the allegedly "wet" areas were located directly below where a vehicle would park and, as a result, would not prevent safe ambulation at the Plaza. (Schneider Report, at 9). Clearly, the parties disagree whether the parking spaces are slip resistant, and have both cited to divergent expert testimony in support of their positions. Since there is conflicting evidence on the issue of whether Barrier Nos. 17, 20, and 24 are "slip resistant" within the meaning of Section 302.1, the Court believes the determination of whether Barrier Nos. 17, 20, and 24 violate the ADA is best resolved at trial.

        iv.      <u>Barriers that the Defendant claims do not exist due to the availability of alternative routes of travel</u>

The Defendant claims that Barrier Nos. 2 and 34 do not violate the ADA because disabled patrons can still access the Plaza using alternative routes of travel. Section 403.1 of the 2010 Guidelines states that "[w]alking surfaces that are part of an accessible route shall comply with 403." To comply with Section 403, "[f]loor or ground surfaces shall comply with 302," i.e. be "stable, firm, and slip resistant." In addition, "[t]he running slope of walking surfaces shall not be steeper than 1:20," and [t]he cross slope of walking surfaces shall not be steeper than 1:48." Finally, "[c]hanges in level shall comply with 303," which means that "changes in level of 1/4 inch (6.4 mm) high maximum shall be permitted to be vertical," and [c]hanges in level between 1/4 inch (6.4 mm) high minimum

and 1/2 inch (13 mm) high maximum shall be beveled with a slope not steeper than 1:2." "However, in no case may the combined change in level exceed 1/2 inch (13 mm)." Rather, "[c]hanges in level exceeding 1/2 inch (13 mm) must comply with 405 (Ramps) or 406 (Curb Ramps)."

Here, the Plaintiff contends that Barrier Nos. 2 and 34 violate Section 403 of the 2010 Guidelines due to there being surface damage that poses travel safety concerns, and because there are changes in level that exceed 1/2 inch. (Schneider Report, at 1). The Defendant, for its part, contends that there is an accessible path of travel directly to the east of Barrier No. 2. With respect to Barrier No. 34, the Defendant contends that the walkway is oversized and, as a result, provides an alternative accessible route that is free of damage and excessive changes in level. The Plaintiff responds that the alternative routes identified by the Defendant would require disabled patrons to cut across a vehicular way and into oncoming traffic, rather than to cross at the Plaza's designated crosswalks. (Plaintiff's Response, at 16-17). Moreover, according to the Plaintiff, the Defendant's "alternative route" arguments implicate Section 4.6.2 of the 1991 Guidelines, which provides that "[a]ccessible parking spaces serving a particular building shall be located on the shortest accessible route of travel from adjacent parking to an accessible entrance," and that with respect to "parking facilities that do not serve a particular building, accessible parking shall be located on the shortest accessible route of travel to an accessible pedestrian entrance of the parking facility."

Upon review of the parties' arguments, the Court believes that Barrier Nos. 2 and 34 may very well violate the Guidelines. However, the Court is not inclined to enter summary judgment for two separate reasons. First, the Plaintiff did not raise non-

compliance with Section 4.6.2 until the Plaintiff's Response and, as a result, the Defendant has not been afforded an opportunity to brief its alleged non-compliance with Section 4.6.2. Second, the Plaintiff has not cited to record evidence regarding whether Barrier Nos. 2 and 34 are located on "the shortest accessible route of travel" between accessible parking spaces and buildings, as required by Section 4.6.2. Accordingly, the Court believes the determination of whether Barrier Nos. 2 and 34 violate the ADA is best resolved at trial.

v.    <u>Barriers the Defendant claims do not exist because the 1991 Guidelines do not require 36 inch landings at the tops of curb ramps</u>

The Defendant claims that Barrier No. 10 does not violate the ADA because the 1991 Guidelines do not require 36 inch landings at the tops of curb ramps. Section 406.4 of the 2010 Guidelines states that "[l]andings shall be provided at the tops of curb ramps," and "[t]he landing clear length shall be 36 inches (915 mm) minimum." Moreover, "[t]he landing clear width shall be at least as wide as the curb ramp, excluding flared sides, leading to the landing." Section 4.7.2 of the 1991 Guidelines, on the other hand, merely states that "transitions from ramps to walks, gutters, or streets shall be flush and free of abrupt changes." Nevertheless, Section 4.8.4 of the 1991 Guidelines states that "[r]amps shall have level landings at the bottom and top of each ramp and each ramp run."

Here, the Plaintiff contends that Barrier No. 10 violates Section 406.4 of the 2010 Guidelines because the landing clear length does not exceed 36 inches, excluding flared sides. The Defendant responds that the 36 inch clear length requirement does not apply because the curb ramp is covered by the 1991 Guidelines. The Plaintiff responds by arguing that Barrier No. 10 violates even the 1991 Guidelines, and that regardless, the

27

2010 Guidelines apply because the Defendant has admitted elsewhere that it has substantially modified the curb ramp; thus triggering the 2010 Guidelines.  Upon review of the parties' arguments, the Court believes that Barrier No. 10 may violate the Guidelines.   However, the Court is not inclined to grant summary judgment for two reasons.  First, the violation of the 1991 Guidelines was not raised until the Plaintiff's Response, and, as a result, the Defendant has not been afforded an opportunity to brief its alleged non-compliance with Sections 4.7.2 and 4.8.4 of the 1991 Guidelines.  Second, the Court does not believe the parties have provided a sufficient evidentiary record from which to determine whether the Defendant's modifications to Barrier No. 10 triggered the 2010 Guidelines.

> vi.   Barriers the Defendant claims do not exist because the parking spaces exceed the width requirements set forth under the Guidelines

The Defendant claims that Barrier No. 13 does not violate the ADA because the width of the particular parking space exceeds the minimum requirements under the Guidelines.  Under Section 502.2 of the 2010 Guidelines, "[c]ar parking spaces shall be 96 inches (2440 mm) wide minimum and van parking spaces shall be 132 inches (3350 mm) wide minimum . . . and shall have an adjacent access aisle complying with 502.3."  Section 502.3, in turn, goes on to provide that "[a]ccess aisles serving car and van parking spaces shall be 60 inches."  Here, the Defendant moved for summary judgment as to Barrier No. 13 because the accessible designated parking space nearest to Staples was measured at 136 inches, which exceeded the minimum width requirements for cars (96 inches) and vans (132 inches) under the 2010 Guidelines.  The Plaintiff responds that summary judgment should be entered in its favor because the *combined* width of the

parking space *and* access aisle is 132 inches, which is less than the required minimum of 156 inches for cars and 192 inches for vans.   Upon review, the Court believes the record is unclear regarding whether the 136 inch measurement included the entire parking space and access aisle, or some lesser combination of the two.   Since the width of the access aisle was not explicitly raised as a ground for finding a violation of the Guidelines until the Plaintiff's Response, the Court believes the determination of whether Barrier No. 13 violates the ADA is best resolved at trial.

**b.      Barriers the Defendant admits may have violated the Guidelines when the Complaint was filed, but which the Defendant claims to have eliminated through its remediation efforts**

The Defendant admits that Barriers 3-5, 7-9, 15, 21-23, 26, 36, 37, and 39 violated the ADA when the Complaint was filed, but contends that those Barriers have been successfully eliminated as a result of its remediation efforts.   These Barriers can be further subdivided into the following two groups for purposes of ruling on the parties' motions for summary judgment.

i.      <u>New Barriers that the Plaintiff contends have been created as a result of the Defendant's remediation efforts.</u>

The Plaintiff does not dispute that the Defendant's remediation efforts eliminated Barrier Nos. 3, 4b, 5, 7, 9, 21, and 23.   Rather, the Plaintiff contends that the Defendant's attempts to remediate Barrier Nos. 3, 4b, 5, 7, 9, 21, and 23 created *new* Barriers that violate the Guidelines.   Since these "new" Barriers were not identified until after the parties submitted their motions for summary judgment, whether the referenced "new" Barriers violate the Guidelines is best determined at trial.   As a result, the Court denies the Plaintiff's Motion as to Barriers 3, 4b, 5, 7, 9, 21, and 23.

ii.    Barriers that the Defendant claims to have eliminated
       as a result of its remediation efforts

Barrier Nos. 4a, 8, 15, 22, 26, 36, 37, and 39 represent Barriers that the Defendant

claims have been eliminated as a result of its remediation efforts, but which the Plaintiff

contend still violate the ADA.

Of these Barriers, Barrier Nos. 8, 22, 26, and 37 present a question of law that the

Court can resolve based on the undisputed facts and record evidence.  In particular, with

respect to Barrier Nos. 8, 22, and 37, the parties agree that the slope of the particular

entranceways exceed the allowance permitted under the 2010 Guidelines.  Nevertheless,

the Defendant argues that it has eliminated the Barriers by installing power-activated

doors.  Section 404.3 of the 2010 Guidelines states that "[a]utomatic doors . . . shall

comply with 404.3."  Section 404.3.2 states that "[c]learances at power-assisted doors

and gates shall comply with 404.2.4."  Section 404.2.4.4 states that "[f]loor or ground

surface within required maneuvering clearances shall comply with 302," and that

"[c]hanges in level are not permitted."  The only noted exception to Section 404.2.4.4 is

that "[s]lopes not steeper than 1:48 [or approximately 2.1%] shall be permitted."

Here, the Plaintiff's expert measured the ground surface slope within the required

door maneuvering clearance for Barrier Nos. 8, 22, 26, and 37 at 4.0%, 3.0%, 2.2% or

2.9%, and 2.6%, respectively.  The Defendant's expert does not disagree with the

Plaintiff's slope measurements, but contends that Section 4.13.6 of the 1991 Guidelines

permits the Defendant to install power activated doors in lieu of having a level surface.

This argument misses the mark entirely.  Even if the 1991 Guidelines allowed for a party

to install power activated doors in lieu of having a level surface, the 1991 Guidelines only

apply if the Defendant can qualify for the "safe harbor" provision under 28 CFR §

35.150(b)(2)(i). To qualify under the "safe harbor" provision, the party must have been in compliance with the 1991 Guidelines. Here, it is undisputed that the Defendant did not qualify under the "safe harbor" provision because it had neither level surfaces nor power activated doors with respect to Barrier Nos. 8, 22, 26, and 37. Moreover, the Defendant likely does not qualify for the "safe harbor" exception because the power activated doors were installed in response to the filing of this lawsuit, which occurred *after* March 15, 2012. Since the Defendant does not qualify for the "safe harbor" provision with respect to Barrier Nos. 8, 22, 26, and 37, the Defendant is required to comply with Section 404.2.4.4. Due to the fact that the undisputed facts and record evidence demonstrate that the Defendant has slopes that exceed the amount permitted under 404.2.4.4, the Court will enter partial summary judgment in favor of the Plaintiff with respect to Barrier Nos. 8, 22, 26, and 37.

Unlike Barrier Nos. 8, 22, 26, and 37, the record evidence related to Barrier Nos. 4a, 15, 36, and 39 is insufficient to warrant summary judgment in favor of either party. With respect to Barrier Nos. 4a, 15, and 36, Section 405.2 of the 2010 Guidelines states that "[r]amp runs shall have a running slope of not steeper than 1:12." However, "[i]n existing sites, buildings, and facilities, ramps shall be permitted to have running slopes steeper than 1:12 complying with Table 405.2 where such slopes are necessary due to space limitations." Table 405.2 permits slopes steeper than 1:12 but not steeper than 1:10 with a maximum rise of 6 inches, and slopes steeper than 1:10 but not steeper than 1:8 with a maximum rise of 3 inches. Slopes steeper than 1:8 are not permitted.

Here, the Plaintiff moved for summary judgment with respect to Barrier Nos. 4a, 15, and 36 on the basis that the slope of the curb ramp exceeded 1:12, or 8.3%. The

Defendant claims that it modified the curb ramp to comply with Section 405.2 of the 2010 Guidelines. However, the Plaintiff's expert states that the curb ramp was subsequently measured to have a slope of 8.7% and 9.1%, which exceeded the maximum amount allowed under the Guidelines. Clearly, there is conflicting evidence regarding whether the Defendant's remediation efforts have satisfied the standards set forth in Section 405.2. Moreover, the record does not contain sufficient evidence to establish whether there are "space limitations" that would implicate the more lenient slope and maximum rise allowances set forth in Table 405.2. As a result, this issue is best resolved at trial.

Finally, with respect to Barrier No. 39, Section 502.4 of the 2010 Guidelines states that "[p]arking spaces and access aisles serving them shall comply with 302." "Access aisles shall be at the same level as the parking spaces they serve." "Changes in level are not permitted," except that "[s]lopes not steeper than 1:48 shall be permitted." Here, the Plaintiff initially moved for summary judgment as to Barrier No. 39 on the basis that the Defendant recommended modifying the slopes to be less than 2.1%. The Plaintiff claims that despite those modifications, the slope has been measured at 2.9%; thus still violating the Guidelines. The Defendant, on the other hand, contends that Barrier No. 39 no longer violates the Guidelines. Since there is conflicting evidence regarding the slope of the parking space, the Court believes this issue is best resolved at trial.

### F.      Plaintiff's entitlement to attorney's fees and costs

In the Defendant's Motion, the Defendant claims that the Plaintiff is not entitled to an award of attorney's fees or costs in this action because he is not a "prevailing party." This argument is premised entirely on the Defendant's standing argument, which the Court largely rejected above. Since the Court has denied summary judgment as to the

majority of the Barriers, the Defendant's arguments regarding costs and attorney's fees are not ripe.

## IV.  Conclusion

Accordingly, it is

**ORDERED** that the Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART** and the Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.  The Plaintiff is entitled to partial summary judgment with respect to Barrier Nos. 8, 22, 26, and 37.  The Defendant is entitled to partial summary judgment with respect to (i) Barrier Nos. 41, 42, 44, 47, 50, and 54, due to the fact that those Barriers are located on or around outparcels that are not owned, leased, or operated by the Defendant; and (ii) Barrier Nos. 6, 11, 14, 18, 19, 25, 28-33, and 38, due to mootness.  Neither party is entitled to summary judgment with respect to Barrier Nos. 1-5, 7, 9, 10, 12, 13, 15-17, 20, 21, 23, 24, 27, 34-36, 39, 40, 43, 45, 46, 48, 49, 51-53, 55, and 56.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 4th day of December, 2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

All Parties and Counsel of Record